UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MINH TU NGUYEN, <br><br> Defendant. | CASE NO. 5:11-cv-06168 RMW <br><br> **ORDER GRANTING DEFAULT JUDGMENT ON BEHALF OF PLAINTIFF** <br><br><br> **[Re Docket No. 16]** |

Plaintiff Joe Hand Promotions, Inc. ("plaintiff") moves for default judgment against defendant Minh Tu Nguyen, individually and doing business as 816 Lounge ("defendant"). The court has considered the papers submitted in support of the motion. For the reasons set forth below, the court grants plaintiff's motion for default judgment.

**I. BACKGROUND**

Plaintiff licenses the right to broadcast closed-circuit sports and entertainment programming in commercial establishments from the producers of such programming. Plaintiff then sub-licenses this right to the company's commercial customers, which consist of establishments such as hotels, casinos, racetracks, bars, restaurants, and nightclubs. Compl. ¶ 10. The program relevant to this case is the boxing match broadcast on December 11, 2010 and marketed as "Ultimate Fighting Championship 124: Georges St. Pierre v. Josh Koscheck" (the

1  "program"). Compl. ¶ 9. By contract, plaintiff secured the exclusive nationwide commercial
2  distribution rights for the program. *Id.* Plaintiff's rights included the right to show all under-card
3  bouts,[1] televised replay, and color commentary encompassed in the television broadcast of the
4  program. *Id.*

5       Plaintiff alleges that on December 11, 2010, the program was unlawfully intercepted and
6  exhibited by defendant in San Jose, California. Details about the night of the fight come from the
7  declaration of David Sims. *See* Dkt. No. 16-3. Mr. Sims entered 816 Lounge at approximately
8  8:53 p.m. *Id.* He did not pay any cover charge to enter the establishment, nor was he required to
9  purchase any food or beverage to watch the program. *Id.* The program was displayed on ten Sharp
10 flat screen televisions. *Id.* Mr. Sims noted that the restaurant could hold over 50 people, and that,
11 throughout his stay, just over 50 people watched the fight. *Id.* Mr. Sims's affidavit does not
12 describe an observation of a satellite dish or a cable box. *Id.* At 9:00 p.m. he left, and swore out
13 the declaration five days later. *Id.*

14      On December 8, 2011, plaintiff filed this action for violations of: (1) the Federal
15 Communications Act of 1934, as amended, 47 U.S.C. § 605; (2) the Cable & Television
16 Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553; (3) California
17 Bus. & Prof. Code Section 17200, and; (4) California law against conversion. This is not
18 plaintiff's first lawsuit, nor likely its last. As it has in countless similar actions filed around the
19 country, plaintiff requests the maximum $10,000 available in statutory damages for violation of 47
20 U.S.C. § 605(e)(3)(C)(i)(II), the maximum $100,000 available in enhanced damages for willful
21 violation of 47 U.S.C. § 605(e)(3)(C)(ii), the maximum $10,000 available for violation of 47
22 U.S.C. § 553(c)(3)(A)(ii), and the maximum $50,000 for each willful violation of 47 U.S.C. §
23 553(c)(3)(B), along with costs and attorneys' fees. With respect to its conversion claim, plaintiff
24 seeks $900, "the amount Defendant would have been required to pay had he ordered the program
25 from Plaintiff." Dkt. No. 16-1.

26      **II. LEGAL STANDARD**

---
[1] Under-card bouts are those fights that occur prior to the headlined boxing match.

Entry of judgment by default is subject to the court's discretion. *See Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956) (holding that trial court did not abuse its discretion in denying a motion for default judgment). A defendant's default does not automatically entitle a plaintiff to judgment. *See, e.g., Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (affirming district court's denial of motions for default judgment where the moving party could not show prejudice as a result of delays). Once the clerk enters default, all well-pleaded allegations regarding liability are taken as true, except as to the amount of damages. *Fair Hous. Of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). This is because the plaintiff must still establish the relief to which it is entitled. *Id.*

### III. DISCUSSION

**A. Default Judgment is Proper Because the *Eitel* Factors are Met**

In exercising its discretion to enter default judgment, the court may consider:

> "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *see also Joe Hand Promotions, Inc. v. Burleson*, No. 11-00499, 2011 WL 4905631, at *2 (E.D. Cal. Oct. 14, 2011). Applying the *Eitel* factors to the instant case, the court finds that default judgment is proper.

First, the court recognizes the possibility that plaintiff will be prejudiced if default judgment is not entered against defendant. Denying judgment against a defendant who does not participate in litigation deprives the plaintiff of a remedy until such time as the defendant chooses to litigate. *See, e.g., Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Thus, the first factor weighs in favor of granting default judgment.

Next, plaintiff has satisfied the second and third *Eitel* factors by showing it is entitled to relief under 47 U.S.C. § 553 and for conversion. To state a claim for a violation of Section 553, the plaintiff must plead that the defendant intercepted or received, or assisted in intercepting or receiving, any communications service offered over a cable system. See 47 U.S.C. § 553(a)(1).

ORDER GRANTING DEFAULT JUDGMENT ON BEHALF OF PLAINTIFF—No. 11-cv-06168 RMW

1  Plaintiff asserts that it "secured the domestic commercial exhibition rights to broadcast the
2  [program] … include[ing] the main event … , under-card bouts, televised replay, and color
3  commentary ... [via] encrypt[ion] and  … closed-circuit [television] … ." Dkt. No. 16-1.
4       Plaintiff also alleges that defendant willfully and unlawfully intercepted the program at the
5  time of its transmission at its commercial establishment. Compl. ¶ 12. Thus, Plaintiff has
6  adequately set forth a claim under 47 U.S.C. § 553.
7       On the other hand, plaintiff has not sufficiently stated a claim under 47 U.S.C. § 605. A
8  signal pirate violates section 605 if he intercepts a satellite broadcast; he violates section 553 if he
9  intercepts a cable signal. *J & J Sports Productions, Inc. v. Manzano*, No. C-08-01872, 2008 WL
10 4542962, at * 2 (N.D. Cal. Sep. 29, 2008). However, he cannot violate both by a single act of
11 interception. *See id.*; *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996). Here, there is no
12 evidence the program was received from a satellite broadcast. Because of the prominent placement
13 required for a satellite dish in comparison to the ease that a cable box can be hidden, the court
14 finds the fact that Mr. Sims did not report seeing a satellite dish to be persuasive evidence that the
15 programming came from a cable signal. See *J & J Sports Productions, Inc. v. Man Thi Doan*, No.
16 08-00324, 2008 WL 4911223, at *3 (N.D. Cal. Nov. 13, 2008) (finding that where no satellite dish
17 was visible, the reasonable inference was that the programming came from a cable box).
18 Accordingly, the court finds the complaint insufficient to sustain liability under section 605.
19      The elements of conversion are: (1) ownership of a right to possession of property; (2)
20 wrongful disposition of the property right of another; and (3) damages. *See G.S. Rasmussen &*
21 *Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992). Plaintiff alleges ownership of the
22 distribution rights to the program, misappropriation of those rights by 816 Lounge's unlawful
23 interception, and damages. Plaintiff has therefore also sufficiently stated a claim for conversion.
24      In analyzing the fourth *Eitel* factor, the sum of money at stake, "the court considers [the]
25 plaintiff's declarations, calculations, and other documentation of damages in determining if the
26 amount at stake is reasonable." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-03594, 2007
27 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Default judgment is disfavored when a large sum
28 of money is involved or the damages sought are unreasonable in light of the defendant's actions.

ORDER GRANTING DEFAULT JUDGMENT ON BEHALF OF PLAINTIFF—No. 11-cv-06168 RMW

*See id.* Where a plaintiff's request for damages is excessive, the court may mitigate the impact of this factor by reducing the amount awarded. *See, e.g., Joe Hand Promotions, Inc. v. Burleson*, No. 11-00499, 2011 WL 4905631, at *4 (E.D. Cal. Oct. 14, 2011). Here, the court finds plaintiff's request for $100,000 in enhanced damages and the maximum statutory damages under § 553 unreasonable in light of the circumstances of the case. *See id.* However, because, as discussed below, the court awards plaintiff a substantially smaller sum, this factor does not weigh strongly against the entry of default judgment.

The remaining *Eitel* factors also support default judgment. There is no genuine issue of material fact because the allegations in the complaint are taken as true, there is no evidence that defendant's failure to participate in the litigation is due to excusable neglect, and although the policy favoring decisions on the merits weighs against entering default judgments, that policy alone is not enough to prevent the entry of judgment here.

The court therefore finds that default judgment is appropriate in this case.

**B. Damages Under 47 U.S.C. § 553**

Section 553(c)(3)(A)(ii) instructs the court to award "a sum of not less than $250 or more than $10,000 as the court considers just." Furthermore, "where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100." 47 U.S.C. § 553(c)(3)(C). The maximum statutory damage award for a willful violation "for purpose of commercial advantage or private financial gain" is $50,000. 47 U.S.C. § 553(b)(2). However, courts in the Ninth Circuit generally have declined to award enhanced damages, where the establishment "does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks." *Kingvision Pay-Per-View, LTD v. Backman*, 102 F. Supp. 2d at 1196, 1198 n.2 (N.D. Cal. 2000); *see also J & J Sports Productions, Inc. v. Medinarios*, No. C-08-0998, 2008 WL 4412240, at *2 (N.D. Cal. Sep. 25, 2008).

The circumstances of this case do not warrant a significant damage award. Entry did not require payment of a cover charge, nor did those attending have to purchase any food or drink. *See* Dkt. No. 16-3. There is no evidence that defendant is a repeat infringer. *See Garden City Boxing*

*Club, Inc. v. Lan Thu Tran*, No. C-05-05017, 2006 WL 2691431, at *2 (N.D. Cal. Sep. 20, 2006) (court awarded minimum statutory damages where there was no indication that defendant's violation was a repeat offense). Defendant did not elicit attendees through posted advertising. *Id.* "Under such circumstances, courts typically have awarded minimal statutory damages." *Medinarios*, 2008 WL 4412240, at *2. However, since the fact that there were over 50 patrons watching the program on ten televisions suggests at least some commercial purpose, the court finds that an award of $2,000 is appropriate.

**C. Conversion Damages**

In addition to statutory damages, plaintiff seeks conversion damages in the amount of $900. Damages for conversion are based on the value of the property at the time of conversion. *See Arizona Power Corp. v. Smith*, 119 F.3d 888, 890 (9th Cir. 1941). In this type of case, courts have generally required the plaintiff to submit evidence – such as a rate card demonstrating sample sub-license fees – to support an award of conversion damages. *See, e.g., Joe Hand Promotions, Inc. v. Be*, No. 11-01333, 2011 WL 5105375 (N.D. Cal. Oct. 26, 2011) (reducing plaintiff's award for conversion damages to the amount listed on the Rate Card plaintiff had submitted into evidence).

Here, plaintiff has submitted evidence supporting the contention that a hypothetical sub-license would have cost defendant $900. *See* Dkt. No. 16-4 (Joe Hand Promotions rate card). Accordingly, the court grants plaintiff's request for $900 in conversion damages.

**III. ORDER**

For the foregoing reasons, the court grants plaintiff's motion for default judgment, and awards $2,900 in damages.

It is so ordered.

DATED:  August 31 , 2012

*Ronald M. Whyte* (signature)

Ronald M. Whyte
United States District Judge

ORDER GRANTING DEFAULT JUDGMENT ON BEHALF OF PLAINTIFF—No. 11-cv-06168 RMW